SOUTHWESTERN TRANSPORTATION Co. *v.* KING

5-3777                                          399 S. W. 2d 276

Opinion delivered February 21, 1966

*William J. Smith, Ben Allen, Q. Byrum Hurst* and *Lloyd M. Roach,* Tyler, Texas, for appellant.

*Louis Tarlowski,* for appellee.

ED. F. McFADDIN, Justice. The Arkansas Commerce Commission granted appellees a certificate to operate as a common carrier of general commodities from Little Rock to Pine Bluff and return; and the appellants prosecute this appeal claiming only one point for reversal: "Appellees wholly failed to establish public convenience and necessity to support the order of the Arkansas Commerce Commission granting the certificate."

The appellees are W. H. King and others, and also the corporation, Red Line Transfer & Storage Company. We will refer to the appellees as "Red Line." The appellants are Southwestern Transportation Company, Missouri Pacific Railroad Company, Missouri Pacific Truck Lines, Inc., and Atlas Transit and Warehouse Company, Inc. We will refer to these parties as "appellants."

Red Line has been operating as a carrier since 1917 with home office in Pine Bluff, Arkansas. For many years Red Line has been both an intra-state and inter-state certificated carrier of general commodities from Little Rock through Pine Bluff to various points in southeast Arkansas,[1] and is now seeking to have its Arkansas certificate enlarged to allow it to pick up in Little Rock, for Pine Bluff (and the Pine Bluff Arsenal), and return. This enlargement would bring Red Line in direct competition—as regards Little Rock to Pine Bluff

---

[1] Red Line goes also to Memphis, Tennessee, Greenville, Mississippi, and other points in interstate commerce; but we are here concerned only with the question of a certificate from Little Rock to Pine Bluff and return.

and return—with the appellants, and also with Superior Forwarding Company and Arkansas Best Freight Company, who already have permits on the questioned trip.

On May 9, 1962 Red Line filed the present application with the Arkansas Commerce Commission. The present appellants opposed the application; a hearing was held in June and July of that year; and on October 23, 1962 the Commerce Commission found:

"After careful consideration of the matters and things involved herein and being well and sufficiently advised in the premises, we find:

"1. That applicant is fit, willing and able, financially and otherwise, properly to perform the proposed service, and to conform to the requirements of the act, and to the rules and regulations of the Commission promulgated thereunder.

"2. That present and future public convenience and necessity require the proposed service.

"3. That the application should be granted."

The order of the Commerce Commission granting the application followed the above quoted findings. The appellants appealed to the Pulaski Circuit Court, which, by judgment of July 19, 1965, affirmed the order of the Commerce Commission; and appellants appealed to this Court. As aforesaid, no question as to the sufficiency of Red Line's ability, equipment, and financial standing is raised. The sole point is that Red Line failed to show the public convenience and necessity required to justify the order of the Commerce Commission.

Red Line's application was filed pursuant to the Arkansas Motor Carriers' Act of 1955, as amended (Ark. Stat. Ann. §§ 73-1754 et seq. [Repl. 1957]). Ark. Stat. Ann. § 73-1762 (Repl. 1957) provides in part:

"(a) Subject to the provisions of this Act, a certificate shall be issued to any qualified applicant therefor, authorizing the whole or any part of the operations covered by the application if it is found that the applicant is fit, willing and able properly to perform the service proposed and to conform to the provisions of this act and the requirements, rules, and regulations of the Commission thereunder, and that the proposed service, to the extent to be authorized by the certificate, is or will be required by the present or future public convenience and necessity; otherwise, such application shall be denied; and the burden of proof shall be upon the applicant; . . "

The appellants bring the record to this Court for trial *de novo*. *Ark. Best Frt. System, Inc.* v. *Mo. Pac. Transport Co.*, 233 Ark. 685, 348 S. W. 2d 694. We have several cases which give the guide lines in a situation like the one here. In *Santee* v. *Brady*, 209 Ark. 224, 189 S. W. 2d 907, we said, as regards public convenience and necessity:

"In Pond on 'Public Utilities,' 4th Edition, § 913 the rule is stated: 'In granting certificates, the public convenience and necessity should be the first consideration, and the interest of public utilities already serving the territory secondary, while the desire of a new applicant for a certificate is relatively a minor matter for the consideration of the commission.'

"And in 42 C. J. 687, in discussing the determination of public convenience and necessity, the rule is stated: 'The convenience and necessity which the law requires to support the public service commission's order for the establishment or extension of motor vehicle transportation service is the convenience and necessity of the public as distinguished from that of an individual or any number of individuals, and this is the primary matter to be con-

sidered in determining what constitutes such public convenience and necessity in a particular case, and the propriety of granting a certificate to that effect. The necessity for the proposed service must be considered as well as the added convenience thereof, . . . . ''

In *Santee* v. *Brady* we also said:

'' 'The general rule is that a certificate may not be granted where there is existing service in operation over the route applied for, unless the service is inadequate, *or* additional service would benefit the general public, *or* unless the existing carrier has been given an opportunity to furnish such additional service as may be required.' (Italics our own.) ''The opportunity to the existing carriers is in the disjunctive sense of 'or' rather than the conjunctive 'and.' In other words, the certificate may issue if public convenience and necessity be shown, even if there be already existing service, provided the Commission finds either: (a) that the present service is inadequate; or (b) that additional service would benefit the general public; or (c) that the existing carrier has been given an opportunity to furnish additional service as may be required.

''In 37 Am. Juris. 530, in discussing the issuance of a certificate of public convenience and necessity where service is already in operation on the same route, the rule is stated disjunctively, as follows: 'The general rule is that a certificate may not be granted where there is existing service in operation over the route applied for, unless the service is inadequate, or additional service would benefit the general public, or the public desires a different means of transportation, or unless the existing carrier has been given an opportunity to furnish such additional service as may be required.' ''

With these quoted guidelines, we have carefully examined the evidence in the record before us and we

find that it preponderates in favor of the conclusion reached by the Arkansas Commerce Commission as regards public convenience and necessity. Red Line is a carrier with certification from Little Rock through Pine Bluff to various cities and towns in southeast Arkansas. Thus, Red Line goes directly from Little Rock through Pine Bluff and return, and yet Red Line has been unable to carry commodity shipments between these two points, a distance of approximately fifty miles. So at its Little Rock depot Red Line could accept commodity shipments to points outside the city limits of Pine Bluff, but not to points within the city limits of Pine Bluff.

Several shippers in Little Rock, and others outside the previous city limits of Pine Bluff, testified that the service of Red Line was far better than the service of other carriers. The County Judge of Jefferson County testified as to the population of Pine Bluff: that it had grown from 20,760 in 1930 to 44,037 in 1960; and that recently the city limits of Pine Bluff had been enlarged to bring in about 7,000 additional population. This enlargement of the city limits of Pine Bluff has meant that several shippers who previously had been outside the Pine Bluff city limits, and thus entitled to use Red Line in shipments to and from Little Rock, would now be compelled to use some other carrier unless Red Line received the certificate here sought by it. These shippers testified that they had found Red Line's service over the years to be better than the service offered by other carriers, particularly as regards time of pick-up and delivery, and other matters.

The appellants, in resisting Red Line's application, claimed that if given a chance they could equal Red Line's service; but the record reflects that these appellants had information, for five years, of Red Line's service to shippers outside the city limits of Pine Bluff, and yet the service of these appellants had not been improved to equal that offered by Red Line. In 1959, Red Line filed an application for a certificate for the hauling of general commodities between Little Rock and Pine

Bluff, and the application was resisted by some of the same carriers that are resisting the application here. Some of the same witnesses who testified in this case stated that they had testified in the 1959 case. Thus, the appellants knew in 1959 that shippers considered Red Line's services to be better than that offered by appellants; and yet after Red Line's 1959 application was defeated, the appellants apparently made no further effort to improve their services.

As a matter of fact, the official of one of the appellants admitted that his service had become less efficient in recent years. Red Line had offered "same day service" from Little Rock to Pine Bluff. The official of one of the appellants testified:

"Q. Your company ever tried same day service?

"A. Oh yes, we had it in for some time years ago.

"Q. Can you tell us why it was discontinued?

"A. We found it to be impractical from the standpoint—while there was some demand for it the demand was an impossible situation in that the people who wanted it couldn't get their freight ready in time to get it to the people in Pine Bluff at the time that they needed it and it fell flat from a standpoint of it just wasn't practical except in isolated instances and there wasn't enough traffic to continue it at that time."

An official of another of the appellants admitted that it was the general custom of the carriers in Little Rock to be closed on Saturday; and an official of another of the appellants admitted that if his company picked up a shipment in Little Rock on Friday, that shipment would not be delivered in Pine Bluff until Monday; and that the same would be true of a shipment picked up in Pine Bluff on Friday. Red Line offered to

make either the same day or overnight delivery on such shipments.

Thus, there is ample evidence that the present service is inadequate, that the additional service would benefit the general public, and that the existing carriers have been given an opportunity for more than five years to furnish such additional service and have failed to do so. In *Santee* v. *Brady, supra,* we held that the existence of either of these factors would be sufficient to show public convenience and necessity. Here, all three factors have been shown; so public convenience and necessity have been clearly established.

Affirmed.