WHEELING PIPE LINE, INC. ET AL v.
ARKANSAS COMMERCE COMMISSION

5-5409                                   460 S. W. 2d 784

Opinion delivered December 21, 1970

*Harper, Young & Smith* and *Q. Byrum Hurst,* for appellants.

*Smith, Williams, Friday & Bowen;* By: *William H. Sutton,* for appellee.

CARLETON HARRIS, Chief Justice. Appellants, Wheeling Pipe Line, Inc., (hereinafter called "Wheeling"), and Earl Gibbon Transport, Inc., (hereinafter called "Gibbon"), appeal from a judgment of the Pulaski Circuit Court affirming an order of the Arkansas Commerce Commission, that order granting the application of Arkansas Transport Company for authority to render service as a motor carrier of petroleum products, intrastate, between all points and places in Arkansas. Ap-

pellants, along with another motor carrier engaged in the same service, were protestants at the hearing on the application before the commission. They contended there, and contend here, that appellee failed to establish that the service applied for is presently required or will be required by future public convenience or necessity. It is also contended that the commission erred in failing to consider the effect of the proposed motor carrier service upon the service rendered by appellants, and it is asserted that their service is adequate to meet the needs of the public.

Harry H. Coonley, president and general manager of appellee company, testified in behalf of the application. The company handles no commodities except petroleum and petroleum products. He testified relative to the present authority of the company to operate in Arkansas, listed the number of units stationed in several different cities, and said that the company was on call 24 hours per day. Mr. Coonley mentioned the great number of changes that had taken place in transportation in the oil industry, stating that where farmers used to bring a 55 gallon drum into the bulk plant, those farms today constitute transport delivery accounts, and that industrial users that once obtained their products from service stations now have their own facilities. The witness said there has been a continuing diminution of intrastate service by railroad, and that new pipe line terminals have been constructed in a number of cities in this state. He explained that the new setup has made intrastate deliveries heavier than in many years; also there are new fuel users and new methods for use in industry and agriculture, this condition being occasioned somewhat by the new industrialization of the state. It was mentioned that additional major oil companies have come into this area; the construction and use of service stations have increased considerably, and all of these facts put together mean that there is a requirement for additional transportation services. Mr. Coonley testified that within the area presently served, his company provides same-day service[1] to and from all

[1]According to testimony, the definition of same-day service is a call in the morning and delivery that same day.

places which the company is authorized to serve, contrasting the advantages of this service with next-day service which is the service normally provided by the companies engaged in motor carrier service; he was confident that if the application should be granted, his company would be able to provide same-day service to all points and places authorized. The witness mentioned the proposed building of new terminal facilities,[2] and stated that additional equipment, where needed, would be stationed at appropriate points; that appellee company is financially able, and stands ready, to provide any and all equipment necessary to provide effective service throughout the state. Mr. Coonley is a past president of the Arkansas Truck and Bus Association and one of the founders of the Arkansas Safety Council.

The application was supported by William C. Pinson, sales representative for Hamilton Oil Company of Memphis, Webb Dowell of Oklahoma City, transportation dispatcher for Continental Oil Company, Leland Cleghorn, a wholesale gasoline distributor owning his own company, L. G. Murrell, co-owner of Horton Oil Company, Lewis D. Rada, traffic manager of petroleum for Kerr-McGehee Corporation, J. W. Dollarhite, supervisor of traffic and rates for Sunray DX Oil Company, J. Lewis, an oil jobber in McGehee, and John Van Sickle, secretary-treasurer of Christopher Oil Company.

Mr. Pinson stated that he was familiar with the intrastate transportation needs of his company in Arkansas, and he stated that the company customers are independent service station operators with retail outlets, jobbers, buying from his company, and reselling to service stations, transport droppers (described as persons who have sufficient storage to receive delivery of a transport load in the industrial field), and agricultural customers. He said that his company initially receives products from refineries and pipe line terminals in operating areas, and the company has need of transportation within the territory served. The witness testi-

---

[2] Arkansas Transport Company presently has terminals at West Memphis, Conway, and North Little Rock. It plans terminals at West Helena, El Dorado, and Ft. Smith.

fied that the service of the applicant within its present service area has been most satisfactory and efficient, and that applicant had provided same-day service whenever he had requested it. According to Pinson, the proposed service would meet a need for petroleum and petroleum products that was not being met by existing carriers. He said that some of his customers had limited storage and might "run dry" if they would not get immediate service; that this condition has brought about a need for same-day service in many cases. The witness stated that he was not receiving same-day service from the existing carriers in the areas where appellee had applied for authority; there might be an isolated case where he had received same-day service, but as a general rule, it was not available. He said that he had asked present carriers to put in same-day service, but had been unable to obtain it. Pinson considered the prospect of having this service as an excellent sales tool with customers who had limited storage problems and might well run out of gasoline over a week-end if they were unable to get a load in on the same day before the station closed; he added that this had happened in the past.

The witness testified that there are peaks and lows with regard to transportation requirements and that there are frequently price changes; that same-day service enables the customer to obtain additional gasoline before the price increase goes into effect. He mentioned contacts with other transport companies that had been unsatisfactory. Pinson said that it was a real convenience to be able to call a carrier before noon and obtain delivery that same day before the customer closed his place of business.

Mr. Dowell testified that Conoco used the services of the applicant company in areas they were permitted to serve from time to time, and that he considered the service outstanding; that if appellee's application were granted he would certainly utilize its services. He said there are times when the present transport service which he is receiving from Ft. Smith is inadequate, and he mentioned dissatisfaction with one of the transport

services. Like Pinson, he mentioned that requirements for additional equipment were increasing because his business was increasing, and he emphasized that his company was receiving demands from its customers for same-day service.

Mr. Cleghorn lives in Arkadelphia, and he stated that he would have a particular need for same-day service. He agreed with Pinson that dealers would let themselves get low in their gas supply and same-day service would be a great convenience and aid in his operation. He said that he had endeavored to obtain same-day service from present transport companies but generally did not receive it. The witness mentioned that Gibbon's service on a next-day basis was satisfactory (considering that it was next-day) but if some company could render same-day service in the future, he would like to have the opportunity to be served by that company. Cleghorn added that he thought it was possible for a petroleum product carrier to provide same-day service, but in his 26 years in the business, he had never seen it with any consistency.

Murrell, whose principal place of business is located in Conway, agreed with the witnesses about the value of same-day service, and he stated that Arkansas Transport had met that need when he had asked for it. He was critical of Wheeling as to the service rendered. Murrell testified that the service offered by applicant would be a particular convenience to customers in smaller towns.

Mr. Rada, a resident of Oklahoma City, was very complimentary of the service given by the applicant (from the Conway and West Memphis terminals), stating that his company had found it very satisfactory, and that same-day service in the above territory had been given in "90% of the places". Mr. Rada said that the sales of his company intrastate in Arkansas in 1967 amounted to 27,679,000 gallons, and that the company desired to expand its facilities, and would utilize the proposed services of the applicant; that one-day delivery was

needed, and the company desired that that service be obtained over the entire state; such a service was not being received from existing carriers.

Mr. Dollarhite, who lives in Tulsa, Oklahoma, agreed with the other witnesses about the value of same-day service, and stated that his company needed additional common carrier service.

Lewis testified that the products of his company were presently shipped from El Dorado by Wheeling, and that company service had been good, but though he had requested same-day service, Wheeling was unable to accommodate him. He also made the same remarks relative to Gibbon. The witness said that it was rare when this service could be obtained; that same-day deliveries would allow him to free several thousand dollars in inventory.

Mr. Van Sickle held the same views and stated that same-day service would meet a need not presently being met by the other carriers. He mentioned ordering a load of gasoline to be picked up in Ft. Smith by Breeding to be hauled to Bentonville the next day, but said it was not delivered until the third day. The witness stated that it is hard to get gasoline just before a week-end since there are not enough trucks to haul all the gasoline everyone needs to fill up their tanks.

Fred Worsham, Vice President for Wheeling, testified that his company had 90 tractors and 114 trailers, and that it was the policy of the company to purchase additional units as needed. He said that it is unrealistic to assume that all same-day shipments can be delivered as requested and that the time of the receipt of the order, as well as loading and delivery time, all play a major part in rendering same-day service. The witness said that it was not a sound business practice for a carrier to own expensive equipment and have trained drivers available only for same-day type service, and that a carrier who received business on the basis that the order would be filled on the same day, would not be able

to compete rate wise with carriers who endeavored to obtain the most utilization of their equipment and personnel. He stated that his company had idle equipment constantly, though there might not be idle equipment at a particular point or a particular time; at other times and places there would be equipment not in use. Worsham said that if the application of appellee were granted and the supporting shippers used the services of the applicant, it probably would divert traffic from some other carriers. The witness stated that he was not aware of complaints concerning the services rendered by his company. Mr. Worsham said that Wheeling does not offer same-day service on a daily basis, not having the equipment available for that consistent service; further, that he did not believe any carrier could regularly provide equipment for same-day service.

Steve McCommas, employed by Hugh Breeding, Inc., at Tulsa, Oklahoma, testified that his company handled business on a call and demand basis, "first come—first served" with exceptions of emergencies; that the normal service rendered from the Ft. Smith terminal on an order received one day, was to make delivery that night, if facilities were available, or on the following day. He said that he had had no complaints from any of the witnesses appearing on behalf of the applicant as to the service Breeding had rendered. Mr. McCommas testified that his company did not offer same-day service regularly, although they would so perform on occasion. He stated that he considered this service, as far as Breeding was concerned, unrealistic and uneconomical, and the company could not offer such a service on a regular basis.

G. O. Coleman, Executive Vice President of Gibbon, testified that same-day service is not frequently requested and that his company has time and equipment to render additional service to new customers; however, he stated that they did not solicit on the basis of offering same-day service, and that it frequently is impossible to provide such a convenience. He said that same-day service in his company would be rendered less than 50% of the time.

Appellants' first point is predicated on the fact that the individuals who testified in support of applicant were not, as they say, members of the "general public", but were persons who were either producers, wholesalers, or distributors of motor fuel, interested in the service only as it affected their own personal needs or the needs of their respective companies. Appellants say that it is apparent that the witnesses were interested in only their own convenience for profit, and the protestants rely in large measure on the case of *Santee v. Brady,* 209 Ark. 224, 189 S. W. 2d 907, wherein it is stated that in determining whether an application should be granted, public convenience and necessity should be the first consideration, the interest of public utilities already serving the territory secondary, and the desire of a new applicant for a certificate should only be considered as a minor matter. We agree with these principles of law, which are reiterated in subsequent cases. See *Southwestern Transportation Company v. King,* 240 Ark. 309, 399 S. W. 2d 276. But nonetheless, we do not agree with appellants' contention that the public would receive no benefit. *Santee v. Brady, Supra,* is a case that involves literally what appellants term "the general public" for Santee was given a permit to operate as a commercial *carrier of passengers;* in other words, he received a permit to operate a bus line. Evidence offered on his behalf consisted of persons who testified that they had no way to get to Little Rock, transact business, and return home the same day, because of the inadequacy of the service offered by those who were opposing the application. Witnesses were offered by the remonstrants, but this court held that the commission was correct in granting the permit to Santee.[3] In cases involving transportation facilities, the proof of convenience and necessity is made by those using the service. Of course, a physician, or a barber, or a shoe salesman, would have no reason to testify that petroleum transportation was inadequate; not being engaged in the oil business, these persons would have no knowledge of the needs of that industry nor would they, since they are not directly affected, have a great deal of interest in the

[3]The case was here reversed because the Circuit Court had reversed the order of the commission granting the application.

subject. This is not to say that there is no benefit to these, or other members of the general public, which will be subsequently mentioned.

The various carriers of general commodities, in making application for additional permits, offer the testimony of those persons who *use the service.* We know of no other way that the need for additional transportation services could be shown. In *Southwestern Transportation Company* v. *King, Supra,* the application of King was supported by shippers who testified that the service of King's company (Red Line) was far better than the service of other carriers. In *Arkansas Motor Freight Lines, Inc.* v. *Batesville Truck Line,* 214 Ark. 448, 216 S. W. 2d 857, the witnesses who supported the successful applicant represented various shippers and recipients of the goods, including one in the building business, one representing a lumber company, one operating a plumbing and electrical shop, and one who operated a wholesale grocery. The court commented that the testimony was impressive, mentioning that the witness in the building business lost over $250.00 because of delay in receiving his shipments from present operators. Further mention was made of the delay in receiving shipments by the other witnesses. In *Arkansas Express, Inc.* v. *Columbia Motor Transport Company,* 212 Ark. 1, 205 S. W. 2d 716, the witnesses supporting the appellee company were businessmen and shippers of merchandise, *i. e., users of the service.* Of course, the witnesses in the case before us are actually members of the public, but even if we use the term "general public" as appellants use it, a benefit is shown, for persons taking a trip on a week-end are clearly inconvenienced if they run out of gasoline, and the station in which they stop for a refill, has also run out because of no week-end deliveries.

Nor do we agree with appellants in their second contention, *viz,* that adequate service is being rendered at the present time; we think the review of the evidence, heretofore set out, contradicts that fact, and there is no need for further comment. It might be pointed out also that there was no occasion to give the protestants an

opportunity to furnish additional service, for the testimony of the officials of these companies made it clear that they have no intention of endeavoring to furnish same-day service on a consistent basis.

We do not know whether appellee can perform in the manner testified to, nor are we well enough versed in the transportation of petroleum products to say whether the proposed service is practical and realistic. Such a determination is one to be made by the commission. It is so well established as to require no citation of authority that while cases from the commerce commission are tried *de novo*, we will not reverse a finding by the commission unless that finding is against the preponderance of the evidence. This court has recognized many times that the members of the commission have an expertise in these matters that we do not have and as stated in *Washington Transfer & Storage Co.*, v. *Harding*, 229 Ark. 546, 317 S. W. 2d 18.

"Where a matter is heard and decided by an administrative body such as the Public Service Commission, [Now Commerce Commission] an order made by it should be upheld by the court on appeal unless it is against the weight of the evidence. . . . We try cases of this kind *de novo*, but it is the duty of the courts to accord due deference to the finding of the Commission, since it is the agency upon which the General Assembly has placed the duty to investigate and determine, in the first instance, the need for any proposed motor carrier service."

Affirmed.